UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH LEWIS, Individually and as Legal
Representative of FORREST LEWIS, et al.,

          Plaintiffs,

    v.                                **DECISION AND ORDER**
                                            11-CV-877S
FMC CORPORATION,

          Defendant.
_____

## I. INTRODUCTION

Plaintiffs, all residents of the Village of Middleport, Niagara County, New York, commenced this tort action, on September 29, 2011, by filing a Summons and Complaint in New York State Supreme Court, County of Erie. On October 19, 2011, Defendant FMC both removed the action to this Court based on diversity of citizenship, and filed a Motion to Dismiss pursuant to Rules 12(b)(5) and (6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion to Dismiss (Docket No. 3) is granted.

## II. BACKGROUND

### A. Procedural Background

In 2004, Plaintiffs commenced a citizen suit in the United States District Court, Western District of New York, asserting claims under various federal environmental statutes and New York common law. They claimed damages based on the alleged migration of contaminants from FMC's pesticide formulations facility located in Middleport, New York to their nearby properties. On March 29, 2011, this Court granted FMC's motion

1

for summary judgment with respect to each of Plaintiffs' federal claims, and then declined to exercise jurisdiction over their state common law claims for private nuisance, public nuisance, and personal injury and property damage.[1] Lewis v. FMC, 786 F. Supp. 2d 690 (W.D.N.Y. 2011).

The present action reasserts those prior state law claims. In filing the present action, Plaintiffs rely on New York C.P.L.R. § 205(a), which provides that, except in circumstances not relevant here, a plaintiff "may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination [of the prior action] provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period." In short, Plaintiffs could validly reassert in state court the claims not decided on the merits in this Court so long as their new complaint was both filed _and_ properly served no later than September 29, 2011. FMC concedes the timeliness of Plaintiffs' state court filing, which is date-stamped September 29, 2011. But, FMC contends it was not properly served within the relevant six-month period and that Plaintiffs' claims are now time-barred.

Both parties submitted affidavits relative to service, in which the following facts are undisputed. FMC Corporation is a Delaware corporation with its principal place of business located in Philadelphia, Pennsylvania. CT Corporation System, located in New York, New York, is FMC's registered agent for service of process in New York State. The foregoing information is on file with the New York State Department of State Division of Corporations

---

[1] The federal court complaint had alleged federal question jurisdiction only.

and publicly available on the Department of State's website.

Lori Morrison is employed by FMC Corporation at its manufacturing plant located at 35 Sawyer Ave., Tonawanda, New York. In her position as Management Systems Administrator, Morrison serves as a general receptionist for the plant, performs various data entry tasks, and signs for UPS and Fed Ex deliveries. She is not authorized to accept service of process on behalf of FMC.

On September 29, 2011, at approximately 4:00 p.m., John Altieri approached the Tonawanda plant's entry gate. Plant visitors are directed, via written instructions, to enter numbers on a keypad to request access. Such calls are routed to a security guard from 8:00 a.m. to 3:30 p.m., and thereafter, are routed to Morrison. Altieri followed the instructions for access, and Morrison answered his call. After Altieri identified himself as a process server, Morrison directed him to the office building and opened the gate. Altieri entered the building and approached Morrison's desk.

The content of their brief exchange is in dispute. According to Morrison, Altieri never asked if she was authorized to accept service on behalf of FMC, and when she asked who the summons was for, Altieri said "anyone." Two other FMC employees, Allison Balling and Debra Overkamp, who were chatting with Morrison at her desk when Altieri arrived, also attest that there was no discussion as to who was authorized to accept service on FMC's behalf, and that Altieri stated the summons was for "anyone." Altieri, on the other hand, avers that he asked whether there was "anybody here who can accept service on FMC," and Morrison responded that she could.

Following their exchange, Altieri handed Morrison the Summons and Complaint,

which she did not refuse.  He then asked her title, which Morrison gave him.

FMC contends the delivery to Morrison did not constitute effective service, and Plaintiffs claim that it did.  Based on these disparate accounts, the Court scheduled an evidentiary hearing for July 11, 2012.  The witness testimony will be assessed in conjunction with the affidavits and the relevant legal requirements for service.

### III.  DISCUSSION

**A.    The Law**

Under New York law, personal service upon a corporation may be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.  A business corporation may also be served pursuant to section three hundred six or three hundred seven of the business corporation law."  N.Y. C.P.L.R. § 311(a)(1).  Section 306 provides for service upon a corporation's registered agent or the Secretary of State.  N.Y. BUS. CORP. LAW § 306(a) and (b)(1).[2]

It is clear, under New York law, that a managing agent under § 311 must be "some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it."  Taylor v. Granite State Provident Ass'n., 136 N.Y. 343, 346 (1893) (cited in Estate of Baratt v. Phoenix Mut/ Life Ins. Co., 787 F.

---

[2] N.Y. BUS. CORP. LAW § 307 applies to foreign corporations not authorized to do business in New York, and is inapplicable here.

Supp. 333, 335 (W.D.N.Y. 1992)).  But, New York's highest court also has observed that the statute recognizes "any other agent authorized by appointment" and that a corporation is free to choose its own agent for receipt of process without regard to title or position.  "In such a case the process server cannot be expected to know the corporation's internal practices.  Reliance may be based on the corporate employees to identify the proper person to accept service."  Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 272 (1980) (service upon person who lacked authority was reasonable where process server announced he was there to serve summons, receptionist referred him to a particular individual, and that person stated she had authority to accept process on behalf of corporation).  In short, a corporation regularly doing business in the State "generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions."  Id. at 273.

Nevertheless, courts evaluating claims that service is ineffective must weigh the circumstances of a particular case, as there may be cases where a process server should reasonably perceive, based on experience and the circumstances presented, that a defendant's employee has improperly assumed authority to accept process.  Id.  For example, New York courts have observed that a receptionist generally is not a person authorized to receive service for a corporate defendant.  Austrian Lance & Stewart, P.C. v. Rockefeller Center, Inc., 163 A.D.2d 125, 128 (1st Dep't 1990) (cited in Amnay v. Del Labs, 117 F. Supp. 2d 283, 286 (E.D.N.Y. 2000)).

This requirement that courts consider the particular circumstances of each case is

5

evident in federal decisions within this Circuit applying New York law. *See, e.g.*, Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc., 301 F.3d 54, 57-58 (2d Cir. 2002) (where process server delivered summons to individual identified by corporate security as an officer authorized to accept service on behalf of corporation, and office manager's affidavit did not refute those facts, process server's reliance was reasonable); Amnay, 117 F. Supp. 2d at 286-87 (corporation was not properly served where *pro se* plaintiff delivered summons to receptionist without first attempting service on any corporate official); Nationwide Mut. Ins. Co. v. Kaufman, 896 F. Supp. 104, 106 (E.D.N.Y. 1995) (where process server with eighteen years experience advised receptionist he was there to serve legal papers on defendants, and she summoned company comptroller who accepted the papers, process server's belief that comptroller was either a managing agent or authorized to accept service was reasonable); Estate of Barrat, 787 F. Supp. at 336 (process server's belief that receptionist was authorized to accept service not reasonable where it was clear that she did not tell him she was so authorized); Breene v. Guardsmark, Inc., 680 F. Supp. 88, 90-92 (S.D.N.Y. 1987) (where experienced process server informed receptionist she was serving legal papers on corporation and needed an authorized person to sign, and receptionist consulted with a managing agent who, within hearing of the process server, directed receptionist to sign for the papers, process server's reliance was reasonable).

**B.     The Circumstances of this Case**

Based on the testimony presented on July 11, 2012, I find the circumstances here weigh in FMC's favor. The testimony was as follows.

Lori Morrison has worked at FMC Tonawanda for nearly 18 years. She serves as

a receptionist, handles all administrative duties for human resources ("HR"), and monitors HR databases. Her title is management systems administrator, and she reports to the on-site HR manager.

A little after 4:00 p.m. on September 29, 2011, a gentleman requested entry to the plant to serve a summons. Morrison asked "for who" and the man responded "FMC." Morrison and her co-workers joked that someone at the plant must be getting a divorce summons, an event that had occurred on a prior occasion. When the man, John Altieri, arrived, she again asked who the summons was for, to which he responded "anyone at FMC." She then responded "well, I can sign for it," as she does for FedEx packages and certified mail receipts. Altieri handed her the papers, she confirmed that they contained the correct plant address, and then she kept them. Prior to this date, Morrison had never been asked to accept service of a summons and had not received instructions from FMC regarding service on FMC.

Deborah Overkamp, the FMC Tonawanda Health and Safety Coordinator, was at Morrison's desk when Altieri pulled up to the entrance. When Morrison got off the phone, she told Overkamp that someone was there to serve a summons and they chatted about an employee who had previously been served divorce papers at the plant. Overkamp remained a few feet away and heard Morrison ask Altieri who he was there to see, to which he responded "anyone from FMC." She observed Altieri hand Morrison the papers, take a brief description of her, and then leave.

Altieri testified that on September 29, 2011, his wife, who works for Plaintiffs' counsel, asked him to serve papers on FMC as a favor. Altieri's wife has worked for

7

Plaintiffs' counsel for more 24 years and Altieri has served process "quite a few dozen" times in that time period. He picked up his wife and arrived at FMC about 4:00 p.m. From the plant gate, Altieri spoke to a woman named Lori and told her he was "serving papers for FMC." She said she would open the gate and instructed him on how to find her at the front desk. Altieri stated "is there anybody here that can accept papers for FMC" and she responded, "I can." Altieri asked her name and title, upon which he assumed "that was suitable service." He handed Morrison the papers, took a brief description of her, and left.

Altieri did not check with the New York Division of Corporations' website to see who was authorized to accept service on behalf of FMC, was not told to get a process server in Albany to serve the secretary of state or in New York City to serve CT Corporation System, and does not know what New York law says about serving corporations. He stated: "Alls I know is when I received these papers for FMC, when I took possession of them, I was told where to go, who to serve, and that's exactly what I did."

It is evident from the testimony that Altieri is not a process server by profession. Though his testimony in this regard was vague, it appears his wife has asked him to serve process for Plaintiffs' counsel on perhaps one or two occasions per year over the past couple of decades. He stated he was not instructed on, and is not aware of, New York's requirements for service on a corporation. Indeed, anyone with such knowledge should have been aware that a "front desk" receptionist, such as Morrison, generally is not a person authorized to receive service for a corporate defendant.

At the hearing, Altieri gave two justifications for assuming that service was reasonable: Morrison told her she could accept service; and he asked her title, which was

sufficiently impressive in terms of conveying authority that he assumed suitable service.

Morrison's testimony regarding the exchange—that Altieri stated the summons was for "anyone"—is confirmed by two witnesses, both of whom gave signed affidavits and one of whom testified at the hearing along with Morrison. In contrast, Altieri testified that, while he is unaware of requirements for serving a corporation, he made proper inquiry of FMC's employees as to who had authority to accept papers on the corporation's behalf.

As for any purported reliance on Morrison's title, it is difficult to believe that Altieri applied such reasoning at the time, in light of his expressed lack of knowledge on serving corporations. Moreover, his testimony that he asked Morrison's title prior to handing her the summons contradicts his affidavit, in which he states that he handed her the summons and then asked her title. (Docket No. 11-2 ¶ 9.) On the whole, then, I find the testimony of Defendant's witnesses more credible than Altieri's.

Were I to find the witnesses equally credible, or Altieri more credible, the result would not differ. Even assuming Morrison indicated she could accept service, Altieri should reasonably have perceived, based on the circumstances, that this front desk employee at a manufacturing facility had improperly assumed the authority to accept process for a multi-national corporation.

### III. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss is granted. Moreover, because the ineffective service occurred on the last day allowable by law, the dismissal must be with prejudice.

## IV. ORDER

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 3) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  August 17, 2012
       Buffalo, New York

                                                         /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                       Chief Judge
                                           United States District Court